IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


HOMEBUILDERS ASSOCIATION OF MISSISSIPPI, INC.;
HOMEBUILDERS ASSOCIATION OF JACKSON, INC.;
and R&s DEVELOPERS, LLC                                         PLAINTIFFS


VS.                              CIVIL ACTION NO. 3:07—cv—716—WHB—LRA


CITY OF BRANDON, MISSISSIPPI                                    DEFENDANT



OPINION AND ORDER

This cause is before the Court on several Motions filed by the parties in the above referenced litigation. Having considered the Motions, Responses, Rebuttals if filed, attachments to the pleadings, as well as supporting and opposing authorities, the Court finds:

The Motion of Defendant in Limine to Exclude Opinions of Brian Richard and Thomas Sager, is not well taken and should be denied.

The Motion of Plaintiffs in Limine Excluding Opinion of Charles D. Cowan, Ph.D., is not well taken and should be denied.

The Motion of Plaintiffs for Declaratory Judgment and/or Partial Summary Judgment is not well taken and should be denied.

The Motion of Defendant for Summary Judgment should be granted in part and denied in part.

## I. Factual Background and Procedural History

The record shows that prior to June 20, 2006, the City of Brandon, Mississippi ("Brandon") had enacted a Zoning Ordinance and a 2001 Comprehensive Plan, under which single-family residences could be constructed within five Zoning Districts: (1) Low-Density Residential District (R-1), (2) Low-Density Residential and Agricultural District (R-1-A), (3) Medium Density Residential District (R-1-B), (4) Medium-Density Residential District (R-2), and (5) Townhouse and Zero Lot Line Residential District (R-3). Neither the Zoning Ordinance nor the 2001 Comprehensive Plan regulated the minimum floor space of newly constructed single-family residences in Brandon.

On June 20, 2006, at a regularly scheduled meeting of the Mayor and Board of Alderman, Brandon adopted an Ordinance that amended several Articles and Sections of the existing Zoning Ordinance ("2006 Amendment"). The 2006 Amendment provides:

> ORDINANCE OF THE CITY OF BRANDON, MISSISSIPPI AMENDING ARTICLE II, SECTION 201 TO AMEND AND ADD CERTAIN DEFINITIONS; AMENDING ARTICLE IV, SECTION 416 PERTAINING TO THE APPLICATION OF ZONING PROVISIONS FOR ANNEXED PROPERTY AND ADDING SECTION 421 PERTAINING TO SITE PLAN REVIEW; AMENDING ARTICLE V, SECTION 503.03 AND 503.07 ARTICLE VI, SECTION 603.03, ARTICLE VII, SECTIONS 703.03, 703.07 AND 705, ARTICLE VIII, SECTIONS 803.03, 803.07 AND 805, AND ARTICLE IX SECTION 903.03 AND 903.07 TO REGULATE MINIMUM FLOOR SPACE, TO PROVIDE FOR SITE PLAN REVIEW AND TO CORRECT LANGUAGE PERTAINING TO SET BACK REQUIREMENTS; AMENDING ARTICLE X, SECTION 1003.02 REGULATING THE DENSITY OF MULTI-FAMILY DWELLINGS; AMENDING ARTICLE XVIII SECTIONS 1850 THROUGH 1858.08 REGULATING PLANNED USE DEVELOPMENT (PUD) DISTRICTS, AND AMENDING ARTICLE XXI SECTION 2108 PERTAINING TO SITE PLAN REVIEW, OF THE

ZONING ORDINANCES OF THE CODE OF ORDINANCES OF THE CITY
OF BRANDON

See Compl. at ¶ 13.  As part of the 2006 Amendment, the following
minimal lot area/floor space requirements were adopted by Brandon:

| Zoning District | Minimum Floor Space | Minimum Lot Area |
|---|---|---|
| R-1 | 1,800 sq. ft. | 12,000 sq. ft. |
| R-1-A | 2,000 sq. ft. | 43,500 sq. ft. |
| R-1-B | 1,600 sq. ft. | 8,500 sq. ft. |
| R-2 | 1,600 sq. ft. | 8,500 sq. ft. |
| R-3 | 1,400 sq. ft. | 1,400 sq. ft. (townhouses) 6,500 sq. ft.(zero lot line dwellings) |

Id. at ¶ 17.  Plaintiffs contend that under the 2006 Amendment,
approximately "96% of all single family residentially zoned property
in Brandon ... will require/mandate the construction of detached
single-family residences with a minimum of 1,600 square feet of
living area on a minimum lot size of 8,500 square feet."  Id. at ¶
21.  Plaintiffs further contend that although residential structures
with a minimum of 1,400 square feet of living area may be
constructed in zone R-3, the "total area currently zoned R-3 in
Brandon and/or projected for use as an R-3 zoned area constitutes
less than 2% of the entire Brandon land area, and was more than
eighty percent (80%) developed when Brandon adopted the 2006
Amendment."  Id. at ¶ 22.

In January of 2007, Brandon amended its Comprehensive Plan ("Comprehensive Plan of 2007") thereby reducing the number of zoning classifications from four (estate residential, low density residential, medium density residential, and high density residential) to two (single-family and high density residential). Additionally, under the Comprehensive Plan of 2007, construction in all single-family residentially zoned districts was limited to a "maximum density of 5 single-family detached residences per acre." Id. at ¶ 19.

Plaintiffs allege that as a result of the foregoing amendments, the cost of newly-constructed single-family residences in Brandon will increase and, therefore, the availability of affordable housing in Brandon will decline. Id. at ¶ 23. Specifically, Plaintiffs allege:

> Minimum floor area requirements bear a direct relationship to the cost of a house. The larger the house, the more likely its costs will be greater. Additionally, living in a more spacious house will be more expensive due to higher taxes, mortgage payments, and expenses for heating, cooling, maintenance and insurance. Prior to the adoption of the 2006 Amendment in question, builders were able to obtain approvals for projects that featured homes of less than 1,400 square feet with starting prices equal to or less than $154,000, and homes of 1,600 square feet or less with starting prices equal to or less than $176,000 in residentially zoned districts other than just those zoned R-3. Because single family homes of less than 1,400 square feet are not addressed by any zoning classification under the 2006 Amendment, and because single family homes of less than 1,600 square feet are not allowed under any zoning classification other than R-3, any builder, developer or landowner that desires to construct a home of those respective sizes and in those respective price ranges will have to obtain a variance from the City's

> Zoning Ordinance. However, Brandon's Mayor and Board of
> Aldermen have given notice on numerous occasions to
> Plaintiffs' members that it will NOT approve any variance
> request(s) to reduce the minimum floor space requirements
> of any of its single-family residentially zoned districts.

Id. at ¶ 24.

Plaintiff, R&S Developers, LLC ("R&S"), further alleges that in 2006, it purchased a tract of land consisting of 180 acres in Brandon, and 160 acres in Rankin County. In August of 2006, R&S presented Brandon a master plan outlining the development of 110 acres of the tract, 27 acres of which were located in Brandon. As part of the development, R&S requested that the 27 acres in Brandon be rezoned from an R-1-A classification (that required a minimum lot size of 43,500 square feet, and a minimum floor space of 2,000 square feet) to a R-1-B classification (that required a minimum lot size of 8,500 square feet, and a minimum floor space of 1,600 square feet). As part of the master plan, R&S represented that all of the homes to be constructed on the 27 acres would have a minimum of 1,600 square feet of floor space. Brandon denied the request of R&S presumably based on the 2006 Amendment.

On December 7, 2007, Plaintiffs, Homebuilders Association of Mississippi, Inc., Homebuilders Association of Jackson, Inc., and R&S (collectively, "Plaintiffs") filed a Complaint in this Court against Brandon alleging federal law claims including: (Count 1) violation of the Fair Housing Act ("FHA"), codified at 42 U.S.C. § 3604; (Count 2) infringement of substantive due process rights in

5

violation of 42 U.S.C. § 1983; (Count 3) infringement of equal protection rights in violation of 42 U.S.C. § 1983; (Count 5) taking property without just compensation in violation of 42 U.S.C. § 1983; and (Count 9) infringement of federal housing rights in violation of 42 U.S.C. § 1983.[1] Plaintiffs also seek a declaratory judgment that the 2006 Amendment is unlawful and/or unconstitutional on its face or as applied (Count 4), and request a permanent injunction preventing Brandon from adopting and/or enforcing the 2006 Amendment (Count 6). Plaintiffs have also alleged two state law claims: (Count 7) Brandon lacked authority to adopt the 2006 Amendment; and (Count 8) violation of Article 3, Sections 14 and 17 of the Mississippi Constitution. Through their claims, Plaintiffs request declaratory and injunctive relief, compensatory damages in an amount to be determined by the jury, and attorneys' fees and costs. Plaintiffs and Brandon have now moved for summary judgment on all or part of the claims alleged in the Complaint.

## II. Motions in Limine

In addition to the summary judgment motions, the parties have filed motions in limine seeking to exclude the expert witnesses designated by their opponent(s). First, Plaintiffs have moved to

---

[1] As Plaintiffs have alleged claims arising under federal law, the Court finds it may properly exercise federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

exclude the opinions of Charles D. Cowan, Ph.D. ("Cowan"), who has been designated by Brandon as an expert in the fields of statistics and economics, and their applications to business problems. Plaintiffs do not challenge Cowan's qualifications to render expert opinions in the designated areas, but argue that the opinions he offers should be excluded as irrelevant. Specifically, Plaintiffs argue that Cowan's opinions are irrelevant because they are "devoid of any information, inquiry or analysis of whether the 2006 [Amendment] had a 'disparate impact' on minorities and others protected under the FHA", which is the type of claim alleged in this case, but, instead, "contain[] information and analysis of a 'disparate treatment' of minorities and/or other protected classes." See Mem. in Supp. of Pls.' Mot. in Limine Excluding Opinion of Cowan [Docket No. 116], at 2.

After reviewing Cowan's reports, the excerpts of his deposition testimony provided by the parties in reference to the underlying motion, and the arguments in the supporting/opposing memoranda, the court finds that Plaintiffs have failed to show that Cowan's opinions are not relevant in this case and, accordingly, the Court finds that their motion seeking to exclude these opinions should be denied.

Brandon has likewise moved to exclude the expert opinions of Brian Richard, Ph.D. ("Richard") and Thomas Sager, Ph.D. ("Sager"). Again, Brandon does not contest whether Richard or Sager are

qualified to render expert opinions but, instead argues that neither of these experts "offer any opinion that will assist the trier of fact ... [because they] fail to relate reliable and valid information. <u>See</u> Mot. in Limine to Exclude Opinions of Richard and Sager [Docket No. 112], at ¶ 5. Specifically, Brandon argues that the opinions of Richard and/or Sager are unreliable because they are based on unsubstantiated assumptions, unproven methodologies, subjective beliefs, and incorrect or insufficient facts.

After reviewing Richard's Report, Sager's Affidavit, the excerpts of deposition testimony provided by the parties in reference to the underlying motion, and the arguments in the supporting/opposing memoranda, the court finds that Brandon has failed to show that the opinions of Richard and Sager are not relevant in this case. The Court additionally finds that most of the challenges made by Brandon regarding Richard's and Sager's expert opinions relate to the credibility of the opinions, not their admissibility. Such challenges, of course, can be made at trial by way of vigorous cross-examination. For these reasons, the Court finds that the Motion in Limine to Exclude Opinions of Brian Richard and Thomas Sager should be denied.

### III. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate

"specific facts showing that there is a genuine issue for trial."
Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

## IV. Discussion

### A. Federal Law Claims

### 1. Violation of the FHA

Brandon has moved for summary judgment on the FHA violation claim arguing that Plaintiffs lack standing to bring this claim. On the issue of standing:

> The Supreme Court has stated that "standing is a jurisdictional requirement that focuses on the party seeking to get his or her complaint before a federal court and not on the issues he or she wishes to have adjudicated." United States v. Hays, 515 U.S. 737, 742–43 (1995). The FHA affords a private cause of action to any "aggrieved person." 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" includes any person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a

discriminatory housing practice that is about to occur."
42 U.S.C. § 3602(i). The Supreme Court has held that the
sole requirement for standing under the FHA is the
Article III minima. <u>Havens Realty Corp. v. Coleman</u>, 455
U.S. 363, 372, 102 (1982); <u>see</u> <u>also</u> <u>San Pedro Hotel Co.</u>
<u>v. City of Los Angeles</u>, 159 F.3d 470, 475 (9th Cir.
1998). Three elements are required to establish Article
III standing:

> First, the plaintiff must have suffered an
> injury in fact – an invasion of a legally
> protected interest that is (a) concrete and
> particularized, and (b) actual or imminent,
> not conjectural or hypothetical. Second,
> there must be a causal connection between the
> injury and the conduct complained of ....
> Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed
> by a favorable decision.

<u>Hays</u>, 515 U.S. at 742–43.

<u>Lincoln v. Case</u>, 340 F.3d 283, 289 (5th Cir. 2003)(alterations in
original).

In the case *sub judice*, the Court finds that Plaintiffs have
satisfied the three elements necessary to establish standing.
First, Plaintiffs allege an injury that is concrete as they have
alleged a specific harm, namely that the 2006 Amendment
discriminates against minorities because minorities are unlikely to
be able to afford the cost of a newly constructed, 1,600 square
foot home. Additionally, the alleged injury is actual or imminent,
in that Brandon has adopted and enforced the 2006 Amendment,
thereby preventing the construction of single-family homes with
less than the required amount of square footage. Second, the Court
finds, if proved as alleged, that there is a causal connection

between the alleged injury and the 2006 Amendment. Specifically, Plaintiffs contend that because of the minimum square footage requirements mandated by the 2006 Amendment, minorities will not be able to afford the cost of newly constructed homes in Brandon and, therefore, the 2006 Amendment would have a discriminatory impact on minorities. Finally, the Court finds that it would be likely that the complained of injury would be redressed by a favorable decision in that Brandon would be enjoined from continuing to enforce the 2006 Amendment. Accordingly, upon finding that Plaintiffs have standing to pursue the FHA violation claim, the motion of Brandon for summary judgment based of lack of standing is denied.

Both parties have also moved for summary judgment on the FHA claim on its merits. The Court begins its analysis by noting that the FHA prohibits discrimination in housing based on race, color, religion, sex, familial status, national origin, and handicap. See 42 U.S.C. § 3604. To recover under the FHA, an injured party may proceed under either a theory of disparate treatment or disparate impact (also called "discriminatory effect"). See e.g. Simms v. First Gibraltar Bank, 83 F.3d 1546, 1555 (5th Cir. 1996)(agreeing that "a violation of the FHA may be established not only by proof of discriminatory intent, but also by a showing of significant discriminatory effect."); Hanson v. Veterans Admin., 800 F.2d 1381, 1386 (5th Cir. 1986)(indicating that "a violation of section 804 of the Fair Housing Act may be established not only by proof of

discriminatory intent, but also by a showing of a significant discriminatory effect.").

In the case *sub judice*, Plaintiffs allege only a disparate impact claim. To succeed on such claim, a plaintiff is not required to produce evidence of intentional discrimination. <u>See e.g.</u> <u>Munoz v. Orr</u>, 200 F.3d 291, 299 (5th Cir. 2000). Instead, a disparate impact claim challenges neutral policies that create statistical disparities which are equivalent to intentional discrimination. <u>See</u> <u>id.</u>

When deciding a disparate impact claim under the FHA, the Court uses the same burden-shifting framework applied in Title VII cases. Under this framework, the plaintiff must first establish a prima facie case by "showing that the challenged practice of the defendant actually or predictably results in racial discrimination; in other words that it has a discriminatory effect." <u>Summerchase Ltd. P'ship I v. City of Gonzales</u>, 970 F. Supp. 522, 528 (M.D. La. 1997) (quoting <u>Huntington Branch, N.A.A.C.P. v. Town of Huntington</u>, 844 F.2d 926, 934 (2d. Cir. 1988)). In the event the plaintiff establishes a prima facie case, the burden shifts to the defendant to demonstrate that its "actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." <u>Huntington Branch</u>, 844 F.2d at 936. When determining whether a defendant's proffered reason rises to the level of a bona

13

fide governmental interest, the Court considers: (1) whether the ordinance in fact furthers the governmental interest asserted; (2) whether the public interest served by the ordinance is constitutionally permissible and is substantial enough to outweigh the private detriment caused by it; (3) whether less drastic means are available whereby the stated governmental interest may be attained. <u>Summerchase</u>, 970 F. Supp. at 528 (citing <u>United States v. City of Black Jack, Mo.</u>, 508 F.2d 1179, 1186-87 (8th Cir. 1974)). Upon the defendant satisfying its burden, "the presumption created by the prima facie case drops out [and] the plaintiff must then prove that the reason proffered by defendant is a pretext for discrimination." <u>Owens v. Nationwide Mut. Ins. Co.</u>, No. Civ. 3:03-CV-1184, 2005 WL 1837959, at *6-7 (N.D. Tex. Aug. 2, 2005).

Having reviewed the pleadings and exhibits thereto, the Court finds that there exists a genuine issue of material fact with regard to whether Plaintiffs have established a prima facie claim of disparate impact under the FHA. Specifically, after reviewing the evidence, including the reports and opinions of the parties' expert witnesses, the Court finds there exists a fact question as to whether the 2006 Amendment "actually or predictably results in racial discrimination." Accordingly, the Court finds that the motions for summary judgment on the FHA claim should be denied.

## 2.  Section 1983 Claims

In their Complaint, Plaintiffs allege that "[t]he adoption and enforcement of the 2006 Amendment was and is unreasonable and discriminatory, and constitutes an arbitrary, capricious, irrational and/or unreasonable act on the part of Brandon" ... "and is not reasonably related to any legitimate state interest or to the public health, safety, morals or general welfare..." Compl. at ¶ 44.  Based on these allegations, Plaintiffs claim they have been denied their substantive due process rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution.  Id. On the issue of whether substantive due process rights are violated based on zoning regulations, the United States Court of Appeals for the Fifth Circuit has advised:

> "[The] review of municipal zoning is within the domain of the states, the business of their own legislatures ... and should seldom be the concern of federal courts." FM Properties Operating Co. v. City of Austin, 93 F.3d at 173-74 "Nonetheless, when challenges to such land-use decisions aspire to constitutional stature, we view those decisions as 'quasi-legislative' in nature, and thus sustainable against a substantive due process challenge if there exists therefor 'any conceivable rational basis." Id. at 174.  "In other words, such government action comports with substantive due process if the action is rationally related to a legitimate government interest." Id.  "Only if such government action is 'clearly, arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare,' may it be declared unconstitutional." Id. at 174 (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926)); see also Texas Manufactured Housing Ass'n v. City of Nederland, 101 F.3d 1095, 1105 (5th Cir. 1996).

Summerchase, 970 F. Supp. at 535 (alterations in original).

In support of their substantive due process claim, Plaintiffs argue:

> Moreover, Brandon has asserted on numerous occasions, that the sole and only lawful authority for adopting the minimum floor area square footage requirements Ordinance of 2006 here in question, lies within in Section 17-1-3, Miss. Code of 1972 ("are empowered to regulate the ... size of building and other structures"). However, there is no Mississippi constitutional, statutory or other common law authority which has interpreted and/or applied the afore stated portion of Section 17-1-3 to support the adoption and implementation of a minimum floor area/square footage requirement ordinance.

See Pls.' Mem. in Resp. to Mot. for Summ. J. [Docket No. 109], 18-19. The Court finds that even if Brandon has misconstrued the scope of authority granted to it under Mississippi Code Annotated Section 17-1-3, such misconstruction would not give rise to a due process claim. As explained by the Fifth Circuit in FM Properties:

> With respect to the correctness of the City Council's interpretation of [state law], we note that "[t]he power to decide, to be wrong as well as right on contestable issues, is both privilege and curse of democracy." National Paint & Coatings Ass'n v. City of Chicago, 45 F.3d 1124, 1127 (7th Cir. 1995). Ergo, "the due process clause does not require a state to implement its own law correctly[, nor does] [t]he Constitution ... insist that a local government be right." Gosnell v. City of Troy, 59 F.3d 654, 658 (7th Cir. 1995) (citations omitted). Indeed, "[c]onverting alleged violations of state law into federal ... due process claims improperly bootstraps state law into the Constitution." Stern v. Tarrant County Hosp. Dist., 778 F.2d 1052, 1056 (5th Cir. 1985) (en banc). As such, assuming, without deciding, that the City Council has wrongly interpreted [state law], a violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment. See id.; see also Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 558 (5th Cir. 1988), Brennan v.

<u>Stewart</u>, 834 F.2d 1248, 1255 n.11 (5th Cir. 1988); <u>Smith
v. City of Picayune</u>, 795 F.2d 482, 488 (5th Cir. 1986).

<u>FM Properties</u>, 93 F.3d at 174.

In addition, and contrary to the arguments made by Plaintiffs,
Brandon has offered evidence that its adoption of the 2006
Amendment was rationally related to a legitimate government
interest. Specifically, Brandon Alderman James Morris testified
that the decision to pass the 2006 Amendment was made, in part, to
protect the tax base of Brandon and the welfare of the community.
<u>See</u> Mem. in Supp. of Mot. of Def. for Summ. J. [Docket No. 103], at
31-33, and Ex. P (Morris Dep.) at 29, 39.[2] Although the Court
cannot determine conclusively whether protecting the tax base and
welfare of the community were indeed the factors that motivated
Brandon to pass the 2006 Amendment, the Fifth Circuit has found
that "the 'true' purpose of the [policy], (i.e., the actual purpose
that may have motivated its proponents, assuming this can be known)
is irrelevant for rational basis analysis. The question is only
whether a rational relationship exists between the [policy] and a
conceivable legitimate governmental objective." <u>FM Properties</u>, 93
F.3d at 174-75. In the present case, as it is at least debatable

---

[2] In his deposition, Morris explained that construction of
more smaller sized homes, and the resulting densities of houses
and people, result in increased expenditures for police and fire
protection as well as public services and works. He further
explained that although the ad velorum would increase with the
construction of smaller houses, the taxes collected from those
homes would not "keep up" with the expenditures (for example
those necessary for road repair) associated with the growth.

that the passage of the 2006 Amendment was reasonably related to a legitimate governmental objective, the Court finds that no substantive due process violation occurred. <u>See</u> <u>id.</u> at 175 ("If the question is at least debatable, there is no substantive due process violation."). Accordingly, the Court finds that Brandon is entitled to summary judgment on the substantive due process claim alleged by Plaintiffs in their Complaint.

In their Complaint, Plaintiffs also allege that by passing the 2006 Amendment, Brandon has denied them equal protection of the laws in violation of the Fifth and Fourteenth Amendments to the United States Constitution. <u>See</u> Compl. at ¶ 51. The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike. <u>See</u> <u>Bryan v. City of Madison, Miss.</u>, 130 F. Supp. 2d 798, 812 (S.D. Miss. 1999)(citing <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985); <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982)). "In order for an action to be constitutional, it 'is enough that the State's action be rationally based and free from invidious discrimination.'" <u>Id.</u> (quoting <u>Dandridge v. Williams</u>, 397 U.S. 471, 485 (1970)). Additionally:

> The United States Supreme Court has instructed time and again that disparate impact alone will not suffice to state an equal protection violation; otherwise, any law could be challenged on equal protection grounds by whomever it has negatively impacted. <u>Washington v. Davis</u>, 426 U.S. 229 (1976). So, a party who wishes to make out an equal protection claim must prove "the existence of purposeful discrimination" motivating the

> state action which caused the complained-of injury.
> <u>McCleskey v. Kemp</u>, 481 U.S. 279 (1987); <u>Arlington Heights</u>
> <u>v. Metropolitan Housing Dev. Corp.</u>, 429 U.S. 252, (1977);
> <u>Davis</u>, 96 S.Ct. at 2047. "Discriminatory purpose in an
> equal protection context implies that the decisionmaker
> selected a particular course of action at least in part
> because of, and not simply in spite of, the adverse
> impact it would have on an identifiable group." <u>Woods v.</u>
> <u>Edwards</u>, 51 F.3d 577, 580 (5th Cir. 1995)(quoting <u>United</u>
> <u>States v. Galloway</u>, 951 F.2d 64, 65 (5th Cir. 1992)).

<u>Bryan</u>, 130 F.Supp.2d at 812-13. <u>See</u> <u>also</u> <u>Arlington Heights</u>, 429

U.S. at 264-65 (explaining: "Our decision last Term in <u>Washington</u>

<u>v. Davis</u>, 426 U.S. 229 (1976), made it clear that official action

will not be held unconstitutional solely because it results in a

racially disproportionate impact. 'Disproportionate impact is not

irrelevant, but it is not the sole touchstone of an invidious

racial discrimination.' Proof of racially discriminatory intent or

purpose is required to show a violation of the Equal Protection

Clause.")(alterations in original); <u>United States v. Yonkers Bd.</u>

<u>of Educ.</u>, 624 F. Supp. 1276, 1292 (S.D.N.Y. 1985) ("An action which

merely has the unintended effect of creating or maintaining racial

segregation [does not] violate[ ] ... the Constitution"), <u>aff'd</u>,

837 F.2d 1181 (2d Cir. 1987).

In the case *sub judice*, Plaintiffs have not presented any

proof of racially discriminatory intent or purpose on the part of

Brandon when it passed the 2006 Amendment. In addition, Plaintiffs

have not presented any evidence that other developers and/or

builders were treated dissimilarly with respect to the 2006

Amendment. <u>See</u> <u>e.g.</u> <u>Bryan</u>, 130 F. Supp. 2d at 813 (granting

summary judgment in favor of the defendants on the plaintiff's equal protection claim, in part, because there had been no showing that the "plaintiff was denied a building permit while others similarly situated were being issued permits either with no objection or with little resistance."). Accordingly, the Court finds that Brandon is entitled to summary judgment on the equal protection claim alleged by Plaintiffs in their Complaint.

Next, Plaintiffs allege that the "adoption and implementation of the 2006 Amendment by Brandon was, and is, unreasonable and discriminatory and constitutes an arbitrary, capricious, irrational and unreasonable action on the part of the Defendant toward Plaintiffs and specifically R&S..." and that the "actions and decisions of Brandon as aforesaid interfere with Plaintiffs' distinct investment-backed expectations and constitute an improper and/or unlawful taking of Plaintiffs' property without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution. See Compl. at ¶¶ 61, 62. Brandon first moves for summary judgment on this claim on the basis that it is not ripe for adjudication.

On the issue of ripeness, the United States Supreme Court has held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the

regulations to the property at issue." <u>Williamson County Reg'l Planning Comm'n v. Hamilton</u>, 473 U.S. 172, 186-87 (1985). The <u>Williamson County</u> Court also held that a taking claim is not ripe for adjudication unless the plaintiff has sought "compensation through the procedures the State has provided for doing so." <u>Id.</u> at 194.

In the present case, Brandon argues that the taking claim alleged by Plaintiffs is not ripe because none of the plaintiffs has applied for variances from the minimum floor space requirements prescribed by the 2006 Amendment; Brandon has established a process by which variances may be obtained; and Brandon has granted variances to the minimum floor space requirements. <u>See</u> Mem. in Supp. of Def's Mot. for Summ. J., at 35 (citing Exhibits A, J, I and R to the Motion). Plaintiffs have not denied these claims, and have not presented any evidence to contradict that provided by Brandon. As Plaintiffs have not presented any evidence that Brandon "has reached a final decision regarding the application of the regulations to the property at issue" or that they have sought "compensation through the procedures the State has provided for doing so," the Court finds that their taking claim is not yet ripe for adjudication and, therefore, Brandon is entitled to summary judgment on this claim.

Finally, Plaintiffs allege that the "adoption of the 2006 Amendment deprives Plaintiffs and/or other persons similarly

situated and/or all groups contemplated by and protected under the FHA of rights, privileges and immunities secured by the United States Constitution ... Defendant, Brandon, is therefore liable to Plaintiffs under and pursuant to 42 U.S.C. § 1983... See Compl. at ¶ 79. Brandon has moved for summary judgment on this claim arguing that Plaintiffs, by alleging a violation of the FHA, have failed to demonstrate the existence of a federal right that can be enforced under 42 U.S.C. § 1983. See Mem. in Supp. of Def's Mot. for Summ. J., at 23-24 (citing Blessing v. Firestone, 520 U.S. 329 (1997)).

In Blessing v. Firestone, 520 U.S. 329 (1997), the United States Supreme Court held that a plaintiff, in order to seek redress under 42 U.S.C. § 1983, "must assert the violation of a federal right, not merely a violation of federal law." Id. at 340. To determine whether a statutory provision gives rise to a federal right, the Court considers the following three factors: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." Id. at 341. Courts that have considered the issue, have found that certain provision of the FHA, including 42 U.S.C. § 3604, do create

federal rights that may be enforced under 42 U.S.C. § 1983.  See
e.g. South Middlesex Opportunity Council, Inc. v. Town of
Framingham, Civil Action No. 07-12018, 2008 WL 4595369, at *15 (D.
Mass. Sept. 30, 2008)(finding that 42 U.S.C. § 3604 "clearly
establish[es] the rights of persons who experience discrimination
in the housing context...").  As the provisions of the FHA cited by
Plaintiffs in their Complaint, see e.g. Compl. at ¶¶ 38, 39
(discussing discrimination under 42 U.S.C. § 3604(a)) have been
found to establish federal rights that may be enforced under 42
U.S.C. § 1983, the Court finds that Brandon is not entitled to
summary judgment on Count 9 of the Complaint.[3]

_____

[3]  In Gonzaga University v. Doe, 536 U.S. 273 (2002), the
Supreme Court held that "[o]nce a plaintiff demonstrates that a
statute confers an individual right, the right is presumptively
enforceable by § 1983."  Id. at 284.  The Court also recognized,
however, that the "State may rebut this presumption by showing
that Congress 'specifically foreclosed a remedy under § 1983.'"
Id. at n.4 (quoting Smith v. Robinson, 468 U.S. 992, 1004-1005,
n.9 (1984)).  To do so, the "State's burden is to demonstrate
that Congress shut the door to private enforcement either
expressly, through 'specific evidence from the statute itself,'
Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S.
418, 423 (1987), or 'impliedly, by creating a comprehensive
enforcement scheme that is incompatible with individual
enforcement under § 1983' Blessing v. Freestone, 520 U.S. 329,
341 (1997)."  Id. at n.4.
     Brandon has not argued that Plaintiffs' Section 1983 based
on alleged FHA violations has been congressionally foreclosed.
At least one court, however, has found that "the FHA contains a
comprehensive enforcement mechanism for the rights cited by the
Plaintiffs under 42 U.S.C. § 3604" and, therefore, "that the FHA
enforcement mechanism forecloses complementary relief through §
1983."  See South Middlesex, 2008 WL 4595369, at **15-16.
     As the issue of foreclosure was not raised by Brandon in its
pleadings, it will not be considered here.  The Court, however,
will permit this issue to be raised at trial.

**B.  State Law Claims**

Plaintiffs allege that under Mississippi law Brandon did not have lawful authority to adopt or implement the minimum floor space requirement ordinance.  See Compl. at ¶¶ 69-73.  In moving for summary judgment on this claim, Plaintiffs argue:

> Brandon relies exclusively on wording contained in Section 17-1-3, Miss. Code of 1972, which states in pertinent part that "the governing authority of any municipality ... in its discretion, are empowered to regulate the ... size of buildings and other structures" ...  However, there is no Mississippi Constitutional, statutory or common law authority which expressly or impliedly, interpret or apply that portion of Section 17-1-3, relied upon by the Defendant, to allow/provide for the adoption and implementation of an ordinance which establishes/mandates minimum floor area requirements on all single-family residences constructed in all residentially zoned areas within its corporate limits.

See Mem. in Supp. of Pls.' Mot. for Summ. J. [Docket No. 105], at 5.

The statute cited by Plaintiffs provides, in its entirety:

(1) Except as otherwise provided in Article VII of the Chickasaw Trail Economic Development Compact described in Section 57-36-1, for the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of any municipality, and, with respect to the unincorporated part of any county, the governing authority of any county, in its discretion, are empowered to regulate the height, number of stories and size of building and other structures, the percentage of lot that may be occupied, the size of the yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes, but no permits shall be required with reference to land used for

agricultural purposes, including forestry activities as defined in Section 95-3-29(2)(c), or for the erection, maintenance, repair or extension of farm buildings or farm structures, including forestry buildings and structures, outside the corporate limits of municipalities. The governing authority of each county and municipality may create playgrounds and public parks, and for these purposes, each of such governing authorities shall possess the power, where requisite, of eminent domain and the right to apply public money thereto, and may issue bonds therefor as otherwise permitted by law.

MISS. CODE ANN. § 17-1-3(1). Under Mississippi law, "[w]hen the language used by the legislature is plain and unambiguous ... and where the statute conveys a clear and definite meaning ... the Court will have no occasion to resort to the rules of statutory interpretation." Marx v. Broom, 632 So. 2d 1315, 1318 (Miss. 1994). Thus, courts "cannot restrict or enlarge the meaning of an unambiguous statute", and they must "give statutes a practical application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature." Id. (citations omitted). Additionally, the "language of a statute is controlling, and that language should be attributed a usual and ordinary meaning." Ladner v. Necaise, 771 So. 2d 353, 355 (Miss. 2000).

Reviewing the relevant language of Section 17-1-3, i.e. "the governing authority of any municipality ... in its discretion, [is] empowered to regulate the height, number of stories and size of building and other structures", the Court finds that the legislature clearly intend to allow municipalities to regulate the

25

size of buildings.  By attributing the "usual and ordinary meaning"
to the word size, the Court finds that Brandon was statutorily
permitted to enact ordinances that dictate the dimensions of
buildings within its city limits.  See WEBSTER'S NEW UNIVERSAL UNABRIDGED
DICTIONARY 1699 (2d ed. 1983) (defining the term "size" to mean "that
quality of a thing which determines how much space it occupies;
dimensions or magnitude of a thing.").

As regards Plaintiffs' claim that by enacting the 2006
Amendment Brandon overreached its legitimate police powers, the
Mississippi Supreme Court has held:

> In the end all zoning in this state is for "the purpose
> of promoting health, safety, morals, or the general
> welfare of the community".  Miss. Code § 17-1-3 (1972).
> These purposes, of course, derive directly from the
> landmark case of Village of Euclid v. Amber Realty Co.,
> 272 U.S. 365 (1926).  Euclid squarely recognized that the
> zoning power is within the police powers of the state.
> Zoning regulations when challenged under the federal
> constitution were held largely insulated from judicial
> review.   Only where they be clearly arbitrary and
> unreasonable, having no substantial relation to public
> health, safety, morals, or the general welfare, id. at
> 395, may the judiciary interfere.  Euclid further makes
> clear that where compliance with these standards "be
> fairly debatable, the legislative judgment must be
> allowed to control".  Id. at 388.

Woodland Hills Conservation Ass'n, Inc. v. City of Jackson, 443 So.
2d 1173, 1179-80 (Miss. 1983)(alterations in original).  After
reviewing the pleadings in this case, the Court finds that there
exists a fact question as to whether the minimum square feet
requirements in the 2006 Amendment result in a discriminatory
impact.  In the event such impact is found, the 2006 Ordinance

would be clearly unreasonable.  As a fact question exists, the Court finds that none of the parties are entitled to summary judgment on Plaintiffs' claim that Brandon lacked lawful authority to adopt or implement minimal floor space requirements under Mississippi law.

In their Complaint, Plaintiffs also allege that Brandon has violated their rights as protected by Article 3, Sections 14 and 17 of the Mississippi Constitution.  See Compl. at ¶¶ 74-77.  Brandon has now moved for summary judgment on the basis that Plaintiffs failed to provide written notice as required under the Mississippi Tort Claims Act ("MTCA") and, therefore, the Court does not have jurisdiction to adjudicate these claims.

It is well settled that the MTCA "provides the exclusive remedy against a governmental entity and its employees for acts or omissions which give rise to a suit."  McCoy v. City of Florence, 949 So. 2d 69, 77 (Miss. Ct. App. 2006).  It is equally well settled, however, that sovereign immunity does not apply "when the relief sought is a declaration that a particular statute or action of the State is unconstitutional."  City of Belmont v. Mississippi State Tax Comm'n, 860 So. 2d 289, 296 (Miss 2003).

In the case sub judice, the Court cannot determine whether Plaintiffs seek compensatory damages through their state law claims (that would require compliance with the written notice provision of the MTCA), or whether they seek only declaratory or injunctive

relief (that would not require prior written notice).  To the extent Plaintiffs seek compensatory damages on their state law claims, the Court finds that Brandon is entitled to summary judgment on those claims based on the failure to provide written notice as required under the MTCA.  To the extent Plaintiffs seek equitable relief through their state law claims, the Court finds that Brandon is not entitled to summary judgment based on the failure to provide written notice.

## V. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant in Limine to Exclude Opinions of Brian Richard and Thomas Sager [Docket No. 112] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Plaintiffs in Limine Excluding Opinion of Charles D. Cowan, Ph.D. [Docket No. 115] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Plaintiffs for Declaratory Judgment and/or Partial Summary Judgment [Docket Nos. 104 and 106] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendant for Summary Judgment is hereby granted in part, and denied in part.  Summary judgment is granted in favor of Defendant on the following claims: (Count 2) infringement of substantive due process rights in

violation of 42 U.S.C. § 1983; (Count 3) infringement of equal protection rights in violation of 42 U.S.C. § 1983; and (Count 5) taking property without just compensation in violation of 42 U.S.C. § 1983.  Defendant is also granted summary judgment on the state law claims alleged by Plaintiffs to the extent Plaintiffs seek to recover compensatory damages on those claims.  All other claims, including the claims for declaratory and injunctive relief, remain for trial.

SO ORDERED this the 10th day of June, 2009.


<u>s/ William H. Barbour, Jr. </u>
UNITED STATES DISTRICT JUDGE