IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


**HOMEBUILDERS ASSOCIATION OF MISSISSIPPI, INC.;**
**HOMEBUILDERS ASSOCIATION OF JACKSON, INC.;**
**and R&S DEVELOPERS, LLC**                                        **PLAINTIFFS**


**VS.**                               **CIVIL ACTION NO. 3:07-cv-716-WHB-LRA**


**CITY OF BRANDON, MISSISSIPPI**                                    **DEFENDANT**


### OPINION OF THE COURT

This cause is before the Court following trial in the above referenced litigation. After considering the record, the parties' stipulated facts, the governing law, the evidence presented at trial, the arguments made by counsel, and the verdict returned by the jury, the Court finds that judgment should be entered in favor of Defendant.


### I. Jurisdiction and Venue

The Court previously found it could properly exercise federal subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331, because Plaintiffs asserted claims arising under federal law, namely violations of the Fair Housing Act ("FHA"), codified at 42 U.S.C. § 3604, and 42 U.S.C. § 1983.[1] Venue is proper in this Court because all of the events or omissions giving rise to the

---

[1] See Opinion and Order [Docket No. 123], at 6 n.1.

subject claims occurred in the City of Brandon, Mississippi, which is located in the Southern District of Mississippi, Jackson Division. See 28 U.S.C. § 1391(b)(2).

## II. Factual Background and Procedural History

Prior to June 20, 2006, Defendant, the City of Brandon, Mississippi ("Brandon"), had enacted zoning ordinances and comprehensive plans, under which single-family residences could be constructed within the following zoning districts: Low-Density Residential District (R-1), Low-Density Residential and Agricultural District (R-1-A), Medium-Density Residential District (R-1-B), Medium-Density Residential District (R-2), and Townhouse and Zero Lot Line Residential District (R-3). See Pretrial Order [Docket No. 137] at ¶ 8(a)(5). Prior to 2006, there were no minimum floor space requirements for residential construction in Brandon. Id. at ¶ 9(2).

On June 20, 2006, at a regularly scheduled meeting of the Mayor and Board of Alderman, Brandon adopted an Ordinance that amended several Articles and Sections of the existing Zoning Ordinance ("2006 Ordinance"). Id. at ¶ 8(a)(1). The 2006 Ordinance provides:

> ORDINANCE OF THE CITY OF BRANDON, MISSISSIPPI AMENDING ARTICLE II, SECTION 201 TO AMEND AND ADD CERTAIN DEFINITIONS; AMENDING ARTICLE IV, SECTION 416 PERTAINING TO THE APPLICATION OF ZONING PROVISIONS FOR ANNEXED PROPERTY AND ADDING SECTION 421 PERTAINING TO SITE PLAN REVIEW; AMENDING ARTICLE V, SECTION 503.03 AND 503.07

2

> ARTICLE VI, SECTION 603.03, ARTICLE VII, SECTIONS 703.03, 703.07 AND 705, ARTICLE VIII, SECTIONS 803.03, 803.07 AND 805, AND ARTICLE IX SECTION 903.03 AND 903.07 TO REGULATE MINIMUM FLOOR SPACE, TO PROVIDE FOR SITE PLAN REVIEW AND TO CORRECT LANGUAGE PERTAINING TO SET BACK REQUIREMENTS; AMENDING ARTICLE X, SECTION 1003.02 REGULATING THE DENSITY OF MULTI-FAMILY DWELLINGS; AMENDING ARTICLE XVIII SECTIONS 1850 THROUGH 1858.08 REGULATING PLANNED USE DEVELOPMENT (PUD) DISTRICTS, AND AMENDING ARTICLE XXI SECTION 2108 PERTAINING TO SITE PLAN REVIEW, OF THE ZONING ORDINANCES OF THE CODE OF ORDINANCES OF THE CITY OF BRANDON

Id. at ¶ 8(a)(1). The portions of the 2006 Ordinance that were amended to establish minimum floor space requirements include: Article V, Section 503.03 and 503.07 Article VI, Section 603.03, Article VII, Sections 703.03, 703.07 and 705, Article VIII, Sections 803.03, 803.07 and 805, and Article IX Section 903.03 and 903.07. Id. at ¶ 8(a)(2). Under the 2006 Ordinance, Brandon adopted the following minimal lot area/floor space requirements:

| Zoning District | Minimum Floor Space | Minimum Lot Area |
|---|---|---|
| R-1 | 1,800 sq. ft. | 12,000 sq. ft. |
| R-1-A | 2,000 sq. ft. | 43,500 sq. ft. |
| R-1-B | 1,600 sq. ft. | 8,500 sq. ft. |
| R-2 | 1,600 sq. ft. | 8,500 sq. ft. |
| R-3 | 1,400 sq. ft. | 1,400 sq. ft. (townhouses) 6,500 sq. ft.(zero lot line dwellings) |

Id. at ¶ 8(a)(6).

On December 7, 2007, Plaintiffs, Homebuilders Association of Mississippi, Inc., Homebuilders Association of Jackson, Inc., and R&S Developers, LLC (collectively, "Plaintiffs") filed a Complaint

3

in this Court alleging claims including: (Count 1) violation of the FHA, (Count 2) infringement of substantive due process rights in violation of 42 U.S.C. § 1983, (Count 3) infringement of equal protection rights in violation of 42 U.S.C. § 1983, (Count 5) taking property without just compensation in violation of 42 U.S.C. § 1983, and (Count 9) infringement of federal housing rights in violation of 42 U.S.C. § 1983. Plaintiffs sought damages, attorneys' fees, and costs on each of these claims. See Compl. at ¶¶ 42, 48, 54, 65 & 80. Plaintiffs also sought a declaration, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, that the 2006 Ordinance is unlawful and/or unconstitutional on its face or as applied (Count 4), and requested a preliminary and permanent injunction preventing Brandon from adopting and/or enforcing the 2006 Ordinance (Count 6). Plaintiffs additionally sought relief under Mississippi state law claiming that Brandon lacked authority to adopt the 2006 Ordinance (Count 7), and that Brandon had violated Article 3, Sections 14 and 17 of the Mississippi Constitution (Count 8).

On June 10, 2009, the Court entered an Opinion and Order by which the Motion of Plaintiffs for Partial Summary Judgment was denied, and the Motion of Brandon for Summary Judgment was granted in part and denied in part. See Opinion and Order [Docket No. 123]. By this Opinion and Order, Brandon was granted summary judgment on the claims alleged in Counts 2, 3, and 5 of the Complaint. Brandon was also granted summary judgment on the state law claims to the

4

extent Plaintiffs sought to recover monetary damages on those claims. All of the remaining claims were held for trial.

Between June 22 and June 26, 2009, the case was tried to a jury pursuant to the demand made in the Complaint. See Compl. at 29.[2] During their case in chief, Plaintiffs did not submit any evidence on the issue of damages. At the conclusion of Plaintiffs' case in chief, the Court denied the parties' competing motions for directive verdicts. After both parties rested, the Court denied the motion of Plaintiffs for a directed verdict, denied the motion of Brandon for a directed verdict as to the FHA claim, and granted a directed verdict to Brandon as to the remaining Section 1983 claim and the state law claims. After the jury was instructed, it was asked to respond to the following special interrogatories:

> 1. Do you find that the Plaintiffs have proven by a preponderance of the evidence that the subject ordinance has a "significant discriminatory impact" on African Americans, a protected class under the Fair Housing Act.
> _____ Yes          _____ No
>
> If your answer to Question #1 is "No", you have completed your consideration of the Plaintiffs' Fair Housing Claim and you are instructed to sign and date these interrogatories and the Court will enter a Judgment for the Defendant.

---

[2] Brandon did not object to Plaintiffs' demand for a jury trial. In fact, Brandon filed a motion seeking to impanel a twelve member jury, which was denied on June 19, 2009.

If your answer to Question #1 is "Yes", you shall proceed to consider Question #2.

2. Do you find that the Defendant has offered one or more "legitimate business reasons" for the adoption of the subject ordinance?

\_\_\_\_\_ Yes         \_\_\_\_\_ No

If your answer to Question #2 is "No", you have completed your consideration of the Plaintiffs' Fair Housing Claim and you are instructed to sign and date these interrogatories and the Court will enter a Judgment for the Plaintiffs.

If your answer to Question #2 is "Yes", you shall proceed to consider Question #3.

3. Do you find that the Plaintiffs have proven by a preponderance of the evidence that there exists an alternative practice that would achieve the same business ends with a less discriminatory impact.

\_\_\_\_\_ Yes         \_\_\_\_\_ No

If your answer to Question #3 is "Yes", what specific alternate practice or practice do you so find:
_____
_____

If your answer is "Yes", the Court will enter a Judgment for the Plaintiff. If your answer is "No" the Court will enter Judgment for the Defendant.

See Special Interrogatories [Docket No. 140]. On June 26, 2009, the jury answered the first special interrogatory in the negative, thereby finding for Brandon on the FHA claim.

### III. Discussion

**A. Jury Trial**

After the jury returned its verdict, the Court informed the parties that it would hold in abeyance the issue of whether to rely on that verdict when pronouncing judgment. The Court is now prepared to enter a ruling on the issue.

> Under Rule 39 of the Federal Rules of Civil Procedure:
>
> (a) When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless:
>
> (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or
>
> (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

FED. R. CIV. P. 39(a). In the present case, Plaintiff demanded both monetary damages as well as equitable relief in their Complaint. See Compl. at 27-29 (requesting declaratory judgment that the 2006 Ordinance violated Plaintiffs' rights under the FHA, requesting injunction restraining Brandon from implementing and/or enforcing the 2006 Ordinance, and requesting damages "from and against [Brandon] in an amount to be determined by a jury for the damages,

7

injuries, and losses sustained and incurred by the Plaintiffs pursuant to the adoption of the 2006 [Ordinance] ....").

It is well settled that in the event Plaintiffs had only sought equitable relief, there would have been no right to a jury trial in this case. See e.g. United States v. Reddoch, 467 F.2d 897, 899 (5th Cir. 1972) (finding, in a case brought under the FHA, that because the suit was one "for injunctive relief, [and] not one at common law, there was no right to a jury trial."). It is equally well settled, however, that as Plaintiffs had also sought damages on their discrimination claims, they were entitled to a jury trial. See e.g. Curtis v. Loather, 415 U.S. 189, 195 (1974)(holding that an action for damages under the FHA is an action to enforce "legal rights" within the meaning of the Seventh Amendment that requires a jury trial if demanded); LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 426 (2d Cir. 1995)("On a claim for damages under the FHA, either party is entitled, under the Seventh Amendment, to demand a jury trial.")(citing Curtis, 415 U.S. at 192). In the present case, because Plaintiffs sought both compensatory damages and equitable relief, they were entitled to a jury trial on their claim for damages before the Court considered their claims for declaratory and/or injunctive relief. See e.g. LeBlanc-Sternberg, 67 F.3d at 426 (finding that if a claim for damages under the FHA "is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact."

8

(quoting Curtis, 415 U.S. at 196 n.11)). See also Dairy Queen, Inc. v. Wood, 369 U.S. 469, 473 n.8 (1962)(instructing that it makes "no difference" if the equitable claims presented clearly outweigh the legal claims – even if the "the basic issue of the case taken as a whole is equitable" ... "[A]s long as any legal cause is involved the jury rights it creates control."). Additionally, because the damages claim in this case is based on the same facts as the equitable claims, i.e. whether the 2006 Ordinance is discriminatory, the Court is bound by the jury's factual determinations when considering the equitable claims. As explained by the Seventh Circuit Court of Appeals in Snider v. Consolidation Coal Co., 973 F.2d 555, 559 (7th Cir. 1992):

> When a lawsuit involves both legal and equitable claims, the legal claims must be decided by the jury before the court resolves the equitable claims. This ordering of events is required so that the judge's decision with respect to the equitable claims does not bind the jury's decisionmaking ability with regard to factual issues common to both the legal and equitable claims, thereby undermining the guarantees of the Seventh Amendment. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 334 (1979). This ordering of events, designed to prevent the jury from being bound by the judge's factual findings, creates situations in which the judge may be bound by the jury's factual findings. Indeed, this court has held that when common issues are simultaneously tried to both a judge and a jury, the jury's findings with respect to those common issues are binding upon the judge.

(alterations in original)(citations omitted). See also Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993)(explaining that "in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are

9

'based on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'" (quoting Miller v. Fairchild Indus., 885 F.2d 498, 507 (9th Cir. 1989), cert. denied, 494 U.S. 1056 (1990))).

Here, the jury found that Plaintiffs had failed to show that the 2006 Ordinance had a significant discriminatory impact on African Americans. See Special Interrogatory #1 [Docket No. 140]. Based on that factual determination, to which the Court is bound, the Court finds that Brandon is entitled to judgment on Plaintiffs' claims for declaratory and injunctive relief. See e.g. Song v. Ives Labs., Inc., 957 F.2d 1041, 1048 (2d Cir. 1992)("It is clear that a judge sitting at equity may not render a verdict which is inconsistent with that of a jury sitting at law on a claim involving the same essential elements. This is because '[w]hen legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both.'" (quoting Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 934 (11th Cir.), cert. denied, 464 U.S. 826 (1983))(citing Dairy Queen, 369 U.S. at 470-73)).

The Court, however, recognizes that the issue of whether the jury should have been permitted to considered the factual issues in this case is somewhat uncertain. Specifically, the record shows that although Plaintiffs sought compensatory damages in their

Complaint, they did not submit any evidence in support of such damages during their case in chief. Thus, it is arguable that after Plaintiffs rested at trial, the only claims remaining were for equitable relief and, as discussed above, such claims are to be decided by the Court. In the event the Court erred in permitting the jury to consider the factual issues in this case, and/or in the event the Court is not bound by the jury's determination on those issues, the Court enters the following findings of fact and conclusions of law.

**B. Findings of Fact and Conclusions of Law**

Under Section 3504(a) of the FHA, it is unlawful to "otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." To recover under the FHA, an injured party may proceed under either a theory of disparate treatment or disparate impact (also called "discriminatory effect"). See e.g. Simms v. First Gibraltar Bank, 83 F.3d 1546, 1555 (5th Cir. 1996)(agreeing that "a violation of the FHA may be established not only by proof of discriminatory intent, but also by a showing of significant discriminatory effect."); Hanson v. Veterans Admin., 800 F.2d 1381, 1386 (5th Cir. 1986)(indicating that "a violation of section 804 of the Fair Housing Act may be established not only by proof of discriminatory intent, but also by a showing of a significant discriminatory

11

effect."). In the present case, Plaintiffs alleged only a discriminatory effect claim.

To succeed on a discriminatory effect claim, the plaintiff is not required to produce evidence of intentional discrimination. See e.g. Munoz v. Orr, 200 F.3d 291, 299 (5th Cir. 2000). Instead, a discriminatory effect claim challenges neutral policies that create statistical disparities which are equivalent to intentional discrimination. See id. When deciding a discriminatory effect claim under the FHA, the Court uses the same burden-shifting framework that is applied in Title VII cases. Under this framework:

> First, a plaintiff must make a prima facie case of discrimination by identifying and challenging a specific [housing] practice, and then show[ing] an adverse effect by offering statistical evidence of a kind or degree sufficient to show that the practice in question has caused the adverse effect in question,
>
> Second, if the plaintiff makes a prima facie case, the defendant must offer a legitimate business reason for the challenged practice,
>
> Third, if the defendant offers such a reason, the plaintiff must demonstrate that the defendant's reason is a pretext for discrimination, or that there exists an alternative [housing] practice that would achieve the same business ends with a less discriminatory impact. In order to evaluate the plaintiff's showing, we consider the strength of the plaintiff's showing of discriminatory effect against the strength of the defendant's interest in taking the challenged action.

Graoch Assocs. # 33, L.P. v. Louisville/Jefferson County Metro Human Relations Comm'n, 508 F.3d 366, 374 (6th Cir. 2007)(alterations in original)(citations omitted).

Again, in the event the Court should have dismissed the jury at

the conclusion of Plaintiffs' case in chief because no proof of damages was presented, the Court makes the election, under Rule 39(c)(1),[3] to try the issue of whether Plaintiffs have made a prima facie case of discrimination with an advisory jury. The jury found that the 2006 Ordinance did not have a significant discriminatory impact. The Court accepts that jury finding and agrees with it.

As regards Plaintiffs' prima facie case, the evidence presented at trial shows that under the 2006 Ordinance, unless a variance is granted, newly constructed single-family homes must contain a minimum of 1,600 square feet of living space. The evidence also establishes that the cost, per square foot, of constructing a new home with a minimum floor space of 1,600 square feet is greater than that associated with constructing a new home with a floor space of less than 1,600 square feet.

To show that the minimum floor space requirements imposed by the 2006 Ordinance had a discriminatory effect on African Americans, Plaintiffs presented statistical evidence through their experts Brian Richard and Thomas Sager. This evidence showed, generally, that African Americans had a lower annual income than Whites, and that fewer African Americans would be able to afford a home with a minimum living space of 1,600 square feet than Whites. The Court finds that the statistical evidence presented by Plaintiffs fails to

---

[3] Rule 39(c)(1) provides: "In an action not triable of right by a jury, the court, on motion or on its own may try any issue with an advisory jury."

13

establish a prima facie case of discriminatory effect.

The statistical evidence presented at trial primarily focused on the affordability of newly constructed homes containing a minimum of 1,600 square feet of living space. As explained in N.A.A.C.P. v. City of Kyle, Tex., Cause No. A-05-CA-979-LY, slip op. W.D. Tex. Mar. 30, 2009):

> Affordability is but one part of availability. Plaintiffs "affordability pools" are based on populations rather than samples and do not include additional information, including the "applicant flow" rate among minorities and whites in the Plaintiffs' test geographic areas, the current and future demand for entry-level homes versus all homes, the number of grandfathered lots exempted from the new requirements under the Revised Ordinances, or the affordable-housing alternatives permitted under the Revised Ordinances. Without an analysis that considers supply and demand and other available affordable-housing alternatives, Plaintiffs cannot make a sufficient showing that the Revised Ordinances make or even will make dwellings, as defined under the FHA, unavailable to minorities proportionately more often than to nonminorities in the City.

Id. at 7-8. The Court finds that Plaintiffs' statistical evidence in this case contains the same deficiencies as those noted in City of Kyle. Specifically, the statistical evidence presented at trial was based on "affordability pools" that considered populations rather than samples, and it did not take into consideration other information, including the "applicant flow" rate among African Americans and Whites in the test areas, the current and future demand for newly constructed entry-level homes versus all homes, the number of grandfathered lots exempted from the 2006 Ordinance, or the affordable housing alternatives permitted under that Ordinance.

In addition, Plaintiffs' experts did not consider the effect, if any, of the presence of existing housing in Brandon, the ability of individuals to qualify for mortgages, or the possibility of receiving financial assistance to purchase a home, when conducting their statistical analyses.

The Court finds that as Plaintiffs' statistical proof failed to consider supply and demand, other available affordable housing alternatives, or other factors that could affect the ability of an African American to purchase a home, that they have not satisfied their burden of proof that the 2006 Ordinance has or will have a discriminatory effect on African Americans. The Court additionally finds that Plaintiffs' proof was insufficient to show that the subject Ordinance makes or will make unavailable or otherwise deny homes to any African American in Brandon. As Plaintiffs have failed to establish a prima facie case that the 2006 Ordinance has or will have a discriminatory effect, the Court finds that Brandon is entitled to judgment on the FHA claim alleged by Plaintiffs as well as their claims for declaratory and injunctive relief.

In the event Plaintiffs have established a prima facie case of discriminatory effect, the Court finds that Brandon has offered legitimate business reasons for enacting the 2006 Ordinance. Specifically, on this issue, the evidence produced at trial shows that the subject Ordinance was enacted to protect the tax base in Brandon and to protect the quality of life of its residents.

As Brandon has shown a legitimate business reason for enacting the 2006 Ordinance, under the applicable burden-shifting framework, Plaintiffs are required to either show that the proffered reasons were pretexts for discrimination, or that there exists alternative housing practices that would achieve the same business ends with a less discriminatory impact. In this case, Plaintiffs did not present any evidence to show pretext. The Court additionally finds that Plaintiffs failed to show that there exists alternative, less discriminatory housing practices that could have achieved Brandon's business reasons for enacting the 2006 Ordinance.

Through their expert Daniel Callies, Plaintiffs presented evidence that Brandon could have used Planned Use Development Districts ("PUDs"), overlay districts, or mixed use zoning, instead of enacting the 2006 Ordinance. Callies also suggested that Brandon could have offered incentives to encourage building larger homes, encouraged the clustering of mixed type homes, adopted design standards, and/or used manufactured housing. In the opinion of the Court, Callies' testimony was nothing more than a general discourse on various current theories of zoning to encourage and facilitate such development types as "new urbanism".

The evidence produced at trial showed that Brandon already uses PUDs and overlay districts which, in turn, result in mixed use zoning and the clustering of mixed home types. Additionally, there was no evidence that the alternatives offered by Callies would

16

achieve the underlying business reasons, i.e. protecting the tax base and the quality of life of its residents, Brandon had when adopting the 2006 Ordinance. Accordingly, the Court finds that the evidence produced at trial did not establish the existence of less discriminatory, alternative housing practices through which the "business reasons" of Brandon could have been achieved. As such, the Court finds that Brandon is entitled to judgment on the FHA claim alleged by Plaintiffs as well as their claims for declaratory and injunctive relief.

## IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED, in accordance with the jury verdict, that Defendant is hereby entitled to judgment on Plaintiffs' Fair Housing Act claim, Plaintiffs' claim for declaratory relief, and Plaintiffs' claim for injunctive relief.

In the alternative

IT IS THEREFORE ORDERED, in accordance with the findings of fact and conclusions of law by the Court, that Defendant is hereby entitled to judgment on Plaintiffs' Fair Housing Act claim, Plaintiffs' claim for declaratory relief, and Plaintiffs' claim for injunctive relief.

A Final Judgment in favor of Defendant, the City of Brandon, Mississippi, shall be entered this day, and the case will be

dismissed with prejudice.

SO ORDERED this the 16th day of July, 2009.


                                          <u>s/ William H. Barbour, Jr.</u>
                                          UNITED STATES DISTRICT JUDGE